Jeannie Joung (SBN 201777)
LAW OFFICES OF JEANNIE JOUNG
3600 Wilshire Blvd., Suite 1416
Los Angeles, California 90010
Telephone: (213) 427-9750
Email: jeannie@jjounglawfirm.com

Attorney for Petitioner
ERDENEBULGAN SAMBUU

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ERDENEBULGAN SAMBUU,<br><br>Petitioner,<br><br>v.<br><br>JAMES JANECKA, Warden, Adelanto ICE Processing Center; THOMAS P. GILES, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | Case No. ________________________<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>[28 U.S.C. § 2241]<br><br>A# 213-035-183<br><br>**IMMIGRATION DETAINEE — EXPEDITED CONSIDERATION REQUESTED** |

## I. INTRODUCTION

1. Petitioner Erdenebulgan Sambuu is a native and citizen of Mongolia, born in 1983, who was inspected and lawfully admitted to the United States at Honolulu, Hawaii, on March 11, 2016, on a B-1/B-2 visa issued after consular screening at the United States Embassy in Ulaanbaatar. He did not enter without inspection. He has lived in this country continuously ever since — more than ten and a half years — and has never left.

2. For nearly a decade, the United States Government has known exactly who Mr. Sambuu is, how to reach him, and what his record contains. In March 2017 he affirmatively filed an application for asylum with United States Citizenship and Immigration Services ("USCIS") under his own name. On the strength of that pending application the Government issued him an Employment Authorization Document in 2017 and a Social Security number, and approved a renewal of his employment authorization. He has never been ordered removed, never been granted and violated voluntary departure, never used an alias or a fraudulent document, and never failed to appear anywhere he was required to be.

3. On August 12, 2026, Mr. Sambuu did what the Government had asked him to do: he appeared at the USCIS office at 3747 South La Brea Avenue in Los Angeles for an appointment in connection with the renewal of his employment authorization. While he sat in the public waiting area, four officers of ICE's Fugitive Operations unit approached him, questioned him, and placed him under arrest — by ICE's own

account, four minutes after they first spotted him. Exh. D at 2–3. ICE's report records no warrant issued before the arrest and no finding that he was likely to flee. He was given no advance notice and no hearing of any kind before he was seized and imprisoned. He has been confined at the Adelanto ICE Processing Center in the California high desert ever since.

4. That seizure is the constitutional violation at the heart of this Petition. "[T]he root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Mr. Sambuu was given no such opportunity. The Government did not weigh his liberty and reach a considered judgment. It arrested a man who had come to a Government office at the Government's invitation, and asked only whether he was out of status — a fact it already knew.

5. Courts of this District have granted the writ on materially indistinguishable facts. In *Zepeda Perez v. Santacruz*, No. 2:26-cv-01749-DMG-AYP, ECF No. 13 (C.D. Cal. Apr. 9, 2026), the court granted the petition and issued the writ, holding that "[p]ost-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process," and that "[d]ue process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred." *Id.* at 11. In *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, ECF No. 10 (C.D. Cal. Feb. 2, 2026), the

court, granting a temporary restraining order, held that "[u]nder *Mathews*, Petitioner should have been afforded a pre-detention hearing," ordered her released, and enjoined Respondents from re-detaining her without a pre-detention hearing before a neutral adjudicator. And in *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19 (C.D. Cal. May 20, 2026), the court granted the writ and ordered release even though the petitioner had already received a bond hearing at which the Immigration Judge denied bond.

6. After his arrest, Mr. Sambuu moved the Immigration Court for a custody redetermination, supported by a seven-exhibit record documenting his lawful admission, his pending asylum application and Government-issued work authorization, United States citizen sponsors with a verified household income, a fixed release address, an employer holding his job open, and the Superior Court records of his sole criminal case. On September 23, 2026, Immigration Judge Bryan DePowell denied bond, holding that Mr. Sambuu had "failed to meet his burden to demonstrate that his release would not pose a danger to the community." Exh. B at 1.

7. The Immigration Judge's finding rests entirely on a single domestic incident on September 16, 2018 — more than eight years ago — for which Mr. Sambuu was convicted on a negotiated plea in 2019 and sentenced to probation rather than prison. The Immigration Judge acknowledged that the record was "devoid of any evidence that [Respondent] had a prior criminal history," and identified no arrest, citation, or charge of any kind in the eight years since. Exh. B at 2. The order nonetheless states

that "[t]here is no evidence of rehabilitation in the record," *id.* at 1, although that record included the sentencing court's own October 20, 2022 minute order recording Mr. Sambuu's custodial status as "own recognizance" and granting his motion to transfer probation supervision to San Bernardino County, Exh. C at 13 — and DHS's own criminal history record shows no arrest, citation, or charge of any kind after 2019. Exh. D at 5–9.

8. That ruling does not answer this Petition, for two independent reasons. First, a post-deprivation hearing cannot cure a violation that was complete the moment Mr. Sambuu was seized without any process at all; a hearing held after the deprivation "cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Second, the hearing Mr. Sambuu belatedly received was itself constitutionally deficient, because it placed the burden on him to earn his freedom, when the Due Process Clause requires the Government to justify, by clear and convincing evidence, the imprisonment of a person it had knowingly permitted to live at liberty — with full knowledge of his record — for years.

9. Mr. Sambuu does not ask this Court to order a bond hearing, and he does not ask it to reweigh the Immigration Judge's discretionary application of the *Matter of Guerra* factors. He asks this Court to do what the Constitution requires when the Government imprisons a person without process: declare the detention unlawful, restore the status quo ante, and order him released.

## II. JURISDICTION

10. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, clause 2 of the United States Constitution (the Suspension Clause). This Court has additional remedial authority under 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act) and 5 U.S.C. § 702.

12. Mr. Sambuu is presently "in custody under or by color of the authority of the United States," 28 U.S.C. § 2241(c)(1), and "in custody in violation of the Constitution or laws or treaties of the United States," *id.* § 2241(c)(3). He is detained at the Adelanto ICE Processing Center pursuant to 8 U.S.C. § 1226(a). That is not merely Petitioner's characterization: the Immigration Judge's own September 23, 2026 custody order identifies the governing authority as "236(a) Bond." Exh. B at 1. He was inspected and admitted at a port of entry, so 8 U.S.C. § 1225(b) has no application to him. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026) (holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"). A noncitizen who, like Mr. Sambuu, was admitted stands on still firmer ground. And he is not subject to mandatory detention under 8 U.S.C. § 1226(c):

DHS has charged a single ground of removability — remaining longer than permitted after nonimmigrant admission, INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B) — which appears nowhere in § 1226(c)(1), Exh. A at 1. Nor does § 1226(c)(1) otherwise reach him. None of his convictions is an aggravated felony or a crime involving moral turpitude, *see* ¶ 41, *infra*. And although § 1226(c)(1)(E)(ii) lists burglary, subparagraph (E) reaches only a noncitizen who also "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a)." 8 U.S.C. § 1226(c)(1)(E)(i). Mr. Sambuu was inspected and admitted; he is not inadmissible on any of those grounds, and DHS has charged none of them. Exh. A at 1. *See Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008) (noncitizen detained under 8 U.S.C. § 1226(a) is subject to discretionary rather than mandatory detention).

13. No jurisdiction-stripping provision applies. Title 8 U.S.C. § 1226(e) provides that the Attorney General's "discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." It does not bar review of constitutional claims or questions of law. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1200–02 (9th Cir. 2011), *abrogated in part on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018). Mr. Sambuu raises a constitutional challenge to the

manner in which he was seized and is being held — not a request that this Court re-exercise the Immigration Judge's discretion.

14. Nor do 8 U.S.C. § 1252(b)(9) or § 1252(g) apply. Section 1252(b)(9) is among the requirements that apply "[w]ith respect to review of an order of removal under subsection (a)(1)," 8 U.S.C. § 1252(b), and § 1252(g) reaches only the decision "to commence proceedings, adjudicate cases, or execute removal orders." Neither bars a challenge to the lawfulness of detention that seeks no review of a removal order and does not challenge the decision to commence proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality op.). Mr. Sambuu is not subject to a final order of removal, and he does not challenge any removal order here.

## III. VENUE

15. Venue is proper in this District. Mr. Sambuu is confined at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California, which lies within the Central District of California. His immediate custodian, Respondent Janecka, is located within this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 443 (2004) ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); 28 U.S.C. § 1391(e).

16. Assignment to the Eastern Division is proper because Adelanto lies in San Bernardino County, which Congress has placed within the Eastern Division of this District, and because the events giving rise to this Petition — Mr. Sambuu's continued confinement — occur there. 28 U.S.C. § 84(c)(1) (Eastern Division comprises the

counties of Riverside and San Bernardino); *see* C.D. Cal. Gen. Order No. 26-11 (assignment of cases); C.D. Cal. Gen. Order No. 26-05 (procedures for immigration habeas corpus petitions under 28 U.S.C. § 2241).

## IV. PARTIES

17. Petitioner Erdenebulgan Sambuu is a native and citizen of Mongolia, born in 1983, A# 213-035-183. He is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, and has been in continuous ICE custody since August 12, 2026.

18. Respondent James Janecka is the Warden, or Facility Administrator, of the Adelanto ICE Processing Center. He is Mr. Sambuu's immediate physical custodian and is sued in his official capacity. He is the only respondent whose presence is required. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

19. Respondent Thomas P. Giles is the Field Office Director for Enforcement and Removal Operations, Los Angeles Field Office, U.S. Immigration and Customs Enforcement, which supervises detention at Adelanto. He is sued in his official capacity.

20. Respondent David J. Venturella is the Acting Director of U.S. Immigration and Customs Enforcement, a position he assumed on or about June 1, 2026, and is sued in his official capacity.

21. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity.

22. Respondent Todd Blanche is the Attorney General of the United States, having been sworn in on August 10, 2026, and is sued in his official capacity.

23. Respondent U.S. Department of Homeland Security is the federal agency responsible for Mr. Sambuu's arrest and continued detention.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Section 2241 contains no statutory exhaustion requirement. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Any exhaustion requirement in this context is therefore prudential and subject to waiver. *Laing v. Ashcroft*, 370 F.3d 994, 997–98 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

25. Waiver is warranted here. First, administrative review would be futile as to the claim actually pleaded. The Board of Immigration Appeals cannot declare ICE's arrest unconstitutional or order the remedy Mr. Sambuu seeks: "It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer." *Matter of Fuentes-Campos*, 21 I&N Dec. 905, 912 (BIA 1997). The violation alleged here occurred before and outside the Immigration Court's custody jurisdiction, and no bond determination the Board could make would restore the process Mr. Sambuu was denied at the moment of his arrest. Nor could the Board shift the burden of proof at a custody hearing; it is bound by its own precedent placing that burden on the detained noncitizen. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

26. Second, resort to the Board would cause irreparable injury. Exhaustion may be waived where administrative remedies are "inadequate or not efficacious," where pursuing them "would be a futile gesture," or where "irreparable injury will result." *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017) (quoting *Laing*, 370 F.3d at 1000). Every day of administrative appeal is another day of unconstitutional confinement. The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention." *Id.* at 995. Third, no agency expertise or factual development is required: the material facts — lawful admission, more than ten years of continuous residence, a pending asylum application, Government-issued work authorization, an arrest at a USCIS office following a USCIS referral, and the absence of any pre-arrest notice or hearing — are documentary and undisputed; most are recorded in ICE's own Form I-213. Exh. D at 1–4.

27. Mr. Sambuu reserved appeal of the September 23, 2026 custody order, and that appeal is due October 23, 2026. Exh. B at 3. Appeal will be filed before the deadline without waiving his position that exhaustion is not required. For the reasons stated above, none is required before this Court may reach the constitutional claims pleaded here.

## VI. STATEMENT OF FACTS

### A. Mr. Sambuu Was Lawfully Admitted and Has Lived in the United States for More Than Ten Years.

28. Mr. Sambuu is a native and citizen of Mongolia. He holds a Mongolian passport, which he had with him when ICE encountered him. Exh. D at 3.

29. On February 2, 2016, the United States Embassy at Ulaanbaatar issued Mr. Sambuu a B-1/B-2 nonimmigrant visa. On March 11, 2016, he was inspected and admitted to the United States at Honolulu, Hawaii, as a B-2 visitor, with authorization to remain until September 10, 2016. He did not enter without inspection. DHS's own Record of Deportable/Inadmissible Alien, Form I-213, so states: "On March 11, 2016, the United States admitted SAMBUU at Honolulu, Hawaii as a nonimmigrant Visitor for Pleasure." Exh. D at 3. The Notice to Appear likewise designates him as a person who has "been admitted to the United States," and the sole charge DHS has lodged — that "after admission as a nonimmigrant" he "remained in the United States for a time longer than permitted" — presupposes that admission. Exh. A at 1.

30. Mr. Sambuu has resided continuously in the United States since March 11, 2016 — more than ten and a half years. He has never departed. He has never entered surreptitiously, never evaded inspection, and has never been the subject of a prior removal order, a voluntary departure order, or a failure to appear. His only immigration violation is that he remained beyond his authorized stay.

**B. For Nearly a Decade, the Government Knew Exactly Who He Was, Where He Was, and What His Record Contained.**

31. Mr. Sambuu affirmatively filed Form I-589, Application for Asylum and for Withholding of Removal, with USCIS under his own name; USCIS received it on March 20, 2017. Exh. D at 3. That application has never been adjudicated, and ICE's report confirms that it "is currently pending." *Id.*

32. On the basis of that pending application, USCIS collected Mr. Sambuu's biometrics and issued him an Employment Authorization Document in category (c)(8), valid November 4, 2017 through November 3, 2019. Exh. C at 3. The Social Security Administration issued him a Social Security number on November 9, 2017.

33. On April 28, 2023 — three and a half years after the October 2019 conviction described below — USCIS approved a renewal of Mr. Sambuu's employment authorization, valid through April 27, 2025. Exh. C at 2. On information and belief, that approval followed the background and security checks USCIS conducts on such applications. The Government thus renewed Mr. Sambuu's authorization to work in this country with his criminal record available to it.

34. Nor was the Government unaware of Mr. Sambuu's criminal case. He was fingerprinted on his 2018 arrest and again when he was remanded to county jail in October 2019, and the California Department of Justice criminal history that ICE ran and appended to its own report records both bookings, a palm print on file since September 2018, and a DNA sample on file since October 2018. Exh. D at 7–9. When

Mr. Sambuu completed his county jail term, he was released on January 14, 2020. *Id.* at 9. No immigration authority took him into custody then, or at any time in the six and a half years that followed. A person intent on evading immigration authorities does not file applications under his own name, submit his fingerprints, and then appear in person at a Government office when summoned. Mr. Sambuu did all of those things.

**C. The 2018 Incident, the Sentence the Superior Court Chose, and Eight Years Since.**

35. Mr. Sambuu discloses his criminal history candidly. On September 16, 2018, in Contra Costa County, he was involved in a domestic incident with his spouse. The District Attorney filed an Information on February 6, 2019, in *People v. Erdenebulgan Sambuu*, Docket No. 05-190222-0, charging corporal injury on a spouse, Cal. Penal Code § 273.5(a), and assault by means likely to produce great bodily injury, § 245(a)(4), each with a great-bodily-injury enhancement under § 12022.7(e). Exh. C at 11; Exh. D at 8.

36. On October 30, 2019, Mr. Sambuu resolved the case by negotiated plea. The Information was amended on its face to add counts of first degree burglary, §§ 459/460(a), felony false imprisonment, §§ 236/237, and misdemeanor battery on a spouse, §§ 242/243(e)(1), and Mr. Sambuu pleaded no contest to those three counts. The corporal-injury and assault counts — the two most serious charges — and both great-bodily-injury enhancements were dismissed. Exh. C at 11; Exh. D at 8.

37. The Superior Court did not impose a prison sentence. It suspended imposition of sentence and placed Mr. Sambuu on four years of formal probation, with 180 days in county jail, a 52-week domestic violence program, 40 hours of community service, fines, and restitution. Exh. C at 12. The criminal protective order the court issued expressly permitted peaceful contact with the protected party and contact for the exchange of their children, for a term of three years. *Id.*

38. Nothing in the court records or in the state criminal history reflects a failure to appear, a bench warrant, or a probation violation. Exh. C at 11–14; Exh. D at 8–9. At sentencing, the court exonerated his bail. Exh. C at 11. On October 20, 2022, the Superior Court recorded his custodial status as "own recognizance" and granted his motion to transfer probation supervision to San Bernardino County under Penal Code § 1203.9. *Id.* at 13. The file was transferred on December 1, 2022. *Id.* at 14.

39. Mr. Sambuu's four-year term of formal probation, imposed October 30, 2019, ran through October 2023. Exh. C at 12–13. He completed the 52-week batterer's intervention program and his term of formal probation without a violation. He has not been arrested, cited, or charged with any offense in the more than eight years since September 16, 2018. DHS has identified none, and its own criminal history record shows none. Exh. D at 5–9.

40. ICE's Form I-213 misdescribes this record in one respect that should be corrected at the outset. Its narrative lists, as if it were a separate case, an "Arrest Date: October 30, 2019" on charges of corporal injury and assault by means likely to

produce great bodily injury, with a disposition of "Convicted" and a sentence of "810 days jail." Exh. D at 3. Nothing in the court record supports that entry. October 30, 2019 is the date on which Mr. Sambuu was sentenced in Docket No. 05-190222-0 and remanded to begin his county jail term. Exh. C at 11. The corporal-injury and assault counts in that case were dismissed — as the California Department of Justice record appended to the same I-213 itself reports, listing both as "DISMISSED/FURTHERANCE OF JUSTICE." Exh. D at 8. The Superior Court imposed 180 days in county jail, Exh. C at 12, and the same state record shows Mr. Sambuu released on January 14, 2020, less than three months after he was remanded. Exh. D at 9. And on December 24, 2024, California granted arrest-record relief under Penal Code § 851.93 — which reaches only arrests that did not result in conviction — for both the separate September 16, 2018 sheriff's booking entry and the October 30, 2019 entry. *Id.* at 8–9. The Immigration Judge did not rely on the "810 days" erroneous entry, Exh. B at 1–2, and Respondents may not do so here.

41. None of Mr. Sambuu's convictions is an aggravated felony: no term of imprisonment of one year or more was imposed, *see* 8 U.S.C. § 1101(a)(43)(F), (G), (a)(48)(B), and California burglary is categorically overbroad as generic burglary. *Descamps v. United States*, 570 U.S. 254, 259, 265 (2013). Felony false imprisonment under California law is not categorically a crime involving moral turpitude, *Turijan v. Holder*, 744 F.3d 617, 621–22 (9th Cir. 2014), and neither is misdemeanor spousal

battery under Penal Code §§ 242/243(e)(1). *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1058–61 (9th Cir. 2006).

**D. Mr. Sambuu Has a Fixed Residence, Citizen Sponsors, and a Job Waiting.**

42. Mr. Sambuu has supported himself and his family through steady work for years — as a delivery driver for Munkh Courier LLC, as a commercial truck driver, and since April 2023 as an assistant mechanic at DBN Auto Transport in Anaheim, California. DBN Auto Transport's owner, Bayasgalan Lkhamsuren, has stated in writing that the company "is willing to continue employing Mr. Erdenebulgan Sambuu upon his release from detention" and that "stable employment and financial support will be available immediately." Exh. C at 8. Munkhtur Ishgenkhuu, owner of Munkh Courier LLC, who has known Mr. Sambuu since 2018, describes him as "punctual, responsible, dependable, and hardworking" and "a person of good moral character." *Id.* at 9.

43. Saruul Tumurbat, a United States citizen who lives in Los Angeles, has asked in writing that Mr. Sambuu be released to her husband, Tsogtsaikhan Ganchimeg — Mr. Sambuu's best friend for more than twenty years — and states that her husband "can support him while his immigration case is pending." Exh. C at 5. Mr. Ganchimeg is also a United States citizen. The sponsors' identity documents, Mr. Ganchimeg's United States passport, and their 2025 federal income tax return were filed with the Immigration Court; they are omitted here to protect third parties'

personal and financial information, and Petitioner will lodge them at the Court's request.

44. Upon release, Mr. Sambuu will reside at the sponsors' household, 343 S. Orange Grove Avenue, Unit 09-17, Los Angeles, California 90036. Erdenetsetseg Yondon, Ms. Tumurbat's mother, who resides at that address, has declared under penalty of perjury that Mr. Sambuu "is a good father" and that she believes he "respects the law and will be a responsible resident in the U.S." Exh. C at 6.

**E. Mr. Sambuu's Only Path to Lawful Status Runs Through the Immigration Court.**

45. Mr. Sambuu's application for asylum, withholding of removal, and protection under the Convention Against Torture has been pending since 2017. No conviction in this record bars that relief as a matter of law: he has no aggravated felony, so the *per se* particularly-serious-crime bar of 8 U.S.C. § 1158(b)(2)(B)(i) does not apply, and he is nowhere near the five-year aggregate sentence that triggers the *per se* bar to withholding of removal under 8 U.S.C. § 1231(b)(3)(B). Any particularly-serious-crime determination would be individualized. *Blandino-Medina v. Holder*, 712 F.3d 1338, 1345–46 (9th Cir. 2013); *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007). Protection under the Convention Against Torture is subject to no criminal bar for deferral. 8 C.F.R. § 1208.17(a). Neither withholding of removal nor CAT protection is subject to any filing deadline, and Mr. Sambuu filed his asylum

application roughly six months after his authorized stay expired. *See* 8 C.F.R. § 1208.4(a)(5)(iv).

46. That relief is adjudicated by the Immigration Judge. Mr. Sambuu cannot obtain it — cannot even be heard on it — except by appearing.

**F. ICE Arrested Mr. Sambuu at a USCIS Appointment, Without Notice, Without a Judicial Warrant, and Without Any Hearing.**

47. On August 10, 2026, ICE opened an enforcement case against Mr. Sambuu "pursuant to a referral from the United States Citizenship and Immigration Services (USCIS)." Exh. D at 2. The referral identified no new conduct of any kind. ICE's report states only that Mr. Sambuu was subject to enforcement action "due to his immigration status." *Id.*

48. Two days later, on August 12, 2026, Mr. Sambuu appeared as scheduled at the USCIS office at 3747 South La Brea Avenue, Los Angeles, California 90016, for a biometrics appointment in connection with the renewal of his employment authorization. Four officers of ERO Los Angeles — Deportation Officers Young, Cook, Moreno, and Pierce — were waiting. Exh. D at 2. Their report records that they arrived at approximately 9:00 a.m. "to investigate," and that at approximately 9:26 a.m. one of them "observed an adult male matching the description of SAMBUU waiting in a public area on the premises." *Id.*

49. The officers identified themselves, "informed the subjects of an ongoing investigation," and conducted what they called a "field interview." Exh. D at 2–3. Mr.

Sambuu gave his true name, identified himself with his Mongolian passport, and answered their questions candidly, acknowledging that he was out of status. *Id.* at 3. At approximately 9:30 a.m. — four minutes after he was first observed — he was placed under arrest. *Id.* ICE records the entire operation as running from 9:00 to 9:35 a.m., *id.* at 4, and records that body-worn camera footage of the encounter exists, *id.* at 1.

50. ICE recorded that Mr. Sambuu stated that he fears persecution or torture if returned to Mongolia and that he has applications pending with USCIS. Exh. D at 4.

51. ICE describes the arrest as the work of "ERO Los Angeles Fugitive Operations" during "a targeted enforcement operation." Exh. D at 3. Mr. Sambuu was not a fugitive. He had never been ordered removed, had never failed to appear, and was sitting in a Government waiting room for a Government appointment.

52. Mr. Sambuu received no advance notice that he would be detained. He was not served with any document informing him that his liberty was at risk, and he was given no opportunity to contest his detention before it occurred. ICE served him with a Notice to Appear the same day, after he was already in custody, charging the single ground of overstay under INA § 237(a)(1)(B). Exh. A at 1, 3. That same day, without counsel, he signed the Notice to Appear's preprinted "Request for Prompt Hearing," waiving the ten-day period before his first hearing. *Id.* at 3.

53. No neutral judicial officer authorized his arrest, and nothing in ICE's report indicates that any administrative warrant had issued before it. The report recites that

the officers came "to investigate" and arrested Mr. Sambuu after he answered their questions; it lists "Warrant of Arrest/Notice to Appear" only as the post-arrest "Disposition" of the case. Exh. D at 1–2. Nor does the report record any determination that Mr. Sambuu was "likely to escape before a warrant can be obtained for his arrest," 8 U.S.C. § 1357(a)(2) — a finding that could not credibly have been made about a man who had come voluntarily to a Government office for a scheduled appointment, two days after ICE opened its case.

54. No hearing of any kind — before an Immigration Judge, an ICE officer, or anyone else — preceded Mr. Sambuu's confinement. He went from a Government office where he had come to renew his work permit to imprisonment in a detention center in the California high desert, with no process in between.

**G. Detention at Adelanto and the Post-Hoc Bond Denial.**

55. After processing at the ICE Los Angeles Field Office, Exh. D at 3, Mr. Sambuu was transported to the Adelanto ICE Processing Center, where he has remained in continuous custody since August 12, 2026. He was placed in removal proceedings before the Adelanto Immigration Court, File No. A 213-035-183. The Notice to Appear set his first hearing for September 21, 2026. Exh. A at 1. The Immigration Court's record reflects that the factual allegations were admitted and the single charge sustained, *id.*; his case now turns on his applications for relief. The next master hearing is scheduled for October 29, 2026. No decision has issued and no final order of removal exists.

56. On September 10, 2026, through undersigned counsel, Mr. Sambuu filed a Request for a Bond Redetermination Hearing and Motion for Release on Bond Pursuant to INA § 236(a), supported by Exhibits A through G, which documented his visa and admission, his Form I-94, his employment authorization and Social Security documents, his sponsors' statements, citizenship, identification, and tax return, the lease for his release address, his employer's commitment to re-employ him, and the Superior Court records of his criminal case. The bond exhibits on which this Petition relies are attached, as filed, as Exhibit C.

57. On September 23, 2026, the Honorable Bryan DePowell denied bond. Exh. B at 1. The Order identifies the statutory basis of Mr. Sambuu's detention as "236(a)" and states the allocation of proof expressly: "Burden: Respondent." *Id.* It holds that Mr. Sambuu "has failed to meet his burden to demonstrate that his release would not pose a danger to the community." *Id.* The Immigration Judge did not reach flight risk.

58. The Order rests on the 2018 incident alone. It recites the September 16, 2018 arrest and the October 30, 2019 convictions, and Mr. Sambuu's own testimony at the hearing that he had been drunk and had struck his wife during that incident; it states that "[t]here is no evidence of rehabilitation in the record." Exh. B at 1. It acknowledges that "the record [is] devoid of any evidence that [Respondent] had a prior criminal history, or that [Respondent] had engaged in any prior [unlawful] behavior," but "nonetheless finds Respondent's criminal conduct indicative of dangerousness." *Id.* at 2 (adapting language from *Matter of Beltrand-Rodriguez*, 29

I&N Dec. 76, 77–78 (BIA 2025)). Citing *Matter of Choc-Tut*, 29 I&N Dec. 48, 50 (BIA 2025), the Order states that it owes no deference to a State court custody order, *id.*, but it does not mention the eight years that have elapsed since the incident, the sentencing court's recording of Mr. Sambuu's custodial status as own recognizance and its transfer of his supervision, his employment, his sponsors, or his pending asylum application.

59. At that hearing, the burden rested on Mr. Sambuu. Under *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006), a detained noncitizen must affirmatively establish "to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *See also* 8 C.F.R. § 1236.1(c)(8). At no point has the Government been required to justify Mr. Sambuu's confinement, by clear and convincing evidence or by any other standard.

**H. The Harm of Continued Confinement.**

60. Mr. Sambuu has now been imprisoned for more than seven weeks. He has lost his income entirely and with it the ability to support his family; his employer has committed to re-employ him on release. Exh. C at 8.

61. Detention also impairs Mr. Sambuu's ability to prosecute the asylum application that is his only path to lawful status — to gather country-conditions evidence, declarations, and corroboration, and to consult with counsel — from a facility in the high desert roughly a hundred miles from Los Angeles.

## VII. CLAIMS FOR RELIEF

## COUNT ONE

### Violation of Procedural Due Process — Fifth Amendment

### (Arrest and Detention Without Notice or a Pre-Deprivation Hearing)

62. Mr. Sambuu realleges and incorporates each preceding paragraph.

63. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law. Those protections extend to noncitizens present in the United States, whatever their status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

### A. Mr. Sambuu Has a Substantial, Constitutionally Protected Liberty Interest in Remaining Free.

64. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. It is "the most elemental of liberty

interests — the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality op.).

65. That interest does not depend on a prior formal release. Where the Government has decided not to detain a noncitizen and has permitted him to build a life in reliance on that decision, he holds the same protected liberty interest as a person the Government released. "[I]n at least some circumstances, a person who is in fact free of physical confinement — even if that freedom is lawfully revocable — has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017). Such conditional liberty "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

66. Mr. Sambuu's interest is substantial. He was lawfully admitted more than ten years before his arrest. In the intervening years the Government processed his asylum application, took his fingerprints, issued and renewed his work authorization, and issued him a Social Security number — all with his address and, after 2019, his criminal record in hand — and he built a working life here in reliance on the Government's decision to leave him at liberty. Length of residence and depth of community connection are precisely what make this interest weighty. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence[,] his constitutional status changes accordingly.").

**B. The Government Provided No Process Whatsoever Before Depriving Him of That Interest.**

67. "[T]he root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." *Zinermon*, 494 U.S. at 127 (citing *Loudermill*, 470 U.S. at 542). The hearing must come first. That is what the word "before" does in the rule.

68. Mr. Sambuu received nothing. No notice. No warrant from a judicial officer. No opportunity to be heard by anyone. USCIS referred him to ICE, ICE opened a case, and two days later four officers arrested him in a USCIS waiting room four minutes after spotting him, and drove him to a detention center in the high desert.

**C. Each Mathews Factor Confirms That a Pre-Deprivation Hearing Was Required.**

69. Courts assess procedural due process challenges to immigration detention under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which balances (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards; and (3) the Government's interest, including the burdens additional process would impose. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (assuming without deciding that *Mathews* governs, and applying its three factors to detention under 8 U.S.C. § 1226(a)).

70. First, the private interest is at its zenith. Mr. Sambuu had lived at liberty in the United States for more than ten years. He had steady employment, citizen friends of two decades prepared to house him, and a pending asylum application. He stood to lose — and did lose — his liberty, his livelihood, and his ability to prepare his case.

71. Second, the risk of erroneous deprivation is not merely high — it is total. Where no procedure at all precedes a deprivation, the risk that the deprivation is erroneous is unmitigated by anything. Nothing about the circumstances of the arrest suggests any individualized determination: ICE's report states that the case was opened "due to his immigration status," and its officers took Mr. Sambuu into custody at a routine benefits appointment after a four-minute field interview, eight years after the only incident in his record, during which time the Government itself had renewed his authorization to work. The single criminal episode the Government now relies upon was known to it for years, and it took no action. Whether that episode makes Mr. Sambuu a present danger in 2026 — after a completed sentence, a sentencing court that recorded his custodial status as own recognizance and transferred his supervision, and eight years without any law-enforcement contact — is exactly the kind of question a hearing exists to answer. A pre-deprivation hearing would have had enormous probable value.

72. The hearing Mr. Sambuu eventually received confirms rather than dispels the risk of error. It placed the burden on him. And the decision it produced states that the record contained "no evidence of rehabilitation," Exh. B at 1, although the record

contained the sentencing court's own 2022 minute order recording his custodial status as own recognizance and transferring his supervision, Exh. C at 13, and although DHS's own criminal history record shows eight years without a single arrest, Exh. D at 5–9. Mr. Sambuu does not ask this Court to reweigh that evidence. The point is procedural: a process that allocates the burden to the detainee, and that can treat eight years of law-abiding conduct as no evidence at all, does not provide the reliability the Due Process Clause demands before a person is imprisoned.

73. Third, the Government's countervailing interest is minimal. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The Government's own conduct belies any claim of urgency: it knew of Mr. Sambuu's 2019 conviction for years and chose not to detain him; it opened its case two days before the arrest; and when it did act, it arrested him at an appointment it had itself scheduled. Nothing prevented the Government from providing notice and a hearing first. And the administrative burden of the additional process sought is negligible. Custody redetermination hearings are an ordinary, everyday feature of immigration court practice, conducted under an existing regulatory framework, 8 C.F.R. § 1003.19; requiring that one precede rather than follow a seizure imposes no new machinery on the Government at all.

74. The *Mathews* factors therefore point in one direction. Mr. Sambuu was entitled to notice and a hearing before he was detained, and he received neither.

**D. The Immigration Judge's Later Denial of Bond Neither Cures Nor Moots the Violation.**

75. The Government will point to the custody redetermination Mr. Sambuu received after his arrest. That argument fails. The constitutional injury was complete the moment he was seized without process; a hearing that comes afterward is, by definition, not the pre-deprivation hearing the Due Process Clause requires. Nor does the outcome of that hearing matter to this analysis — a violation of the right to be heard before a deprivation is not cured by losing a hearing held after it.

76. Courts confronting this precise argument have rejected it. "Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. So too in *Y.M.M. v. Wamsley*, No. 2:25-cv-02075-TMC, ECF No. 14 (W.D. Wash. Nov. 6, 2025), where the court ordered release and barred re-detention absent notice and a hearing, reasoning that "absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process." *Id.* (quoting *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035 (N.D. Cal. 2025)). That is the necessary consequence of *Zinermon*: a remedy available only after the fact does not satisfy a clause whose root requirement is a hearing beforehand.

77. Decisions of this District have applied that principle repeatedly, and have ordered release notwithstanding a custody hearing already held. In *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19 (C.D. Cal. May 20, 2026), the petitioner had already received a bond hearing at which the Immigration Judge denied bond. The court granted the writ notwithstanding, holding that the requirements of due process "generally cannot be satisfied with a post-deprivation hearing"; that this was not one of the "extraordinary situations where some valid governmental interest [was] at stake that justifie[d] postponing the hearing until after the event," *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)); and that "the appropriate remedy for the deprivation is release from custody." *Id.* at 2–4. *Accord Zepeda Perez*, ECF No. 13, at 11 ("Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process."); *Gudavasov v. Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) ("[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing."); *Hasratyan*, ECF No. 10, at 8 ("[T]he post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed.").

78. That reasoning applies with special force where, as here, the belated hearing was itself constitutionally deficient. At a § 1226(a) custody redetermination, the burden falls on the noncitizen: "The burden is on the alien to show to the satisfaction

of the Immigration Judge that he or she merits release on bond." *Matter of Guerra*, 24 I&N Dec. at 40. The Immigration Judge applied exactly that rule. Exh. B at 1 ("Burden: Respondent"). But when the Government seeks to imprison a person it had allowed to live at liberty, due process requires the reverse: the Government must justify the detention. *See Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020) ("[W]here . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (quoting *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018))); *cf. Singh v. Holder*, 638 F.3d at 1203–04 (in the analogous prolonged-detention context, the Government must justify continued detention by clear and convincing evidence). The September 23, 2026 hearing asked the wrong question of the wrong party. It cannot retroactively supply the process Mr. Sambuu was owed before his arrest.

**E. The Remedy for This Violation Is Release.**

79. Because Mr. Sambuu's detention was unlawful from its inception, release is necessary to return him to the status quo — "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). That status is Mr. Sambuu's life at liberty before August 12, 2026. Habeas relief exists to undo unlawful custody, and where the custody was unlawful from the moment it began, release is the remedy that restores what was taken. *See Mikayelyan*, Dkt. No. 19, at 3–4.

**COUNT TWO**

**Violation of 8 U.S.C. § 1226(a) and Its Implementing Regulations**

**(Warrantless Arrest Without a Likelihood-of-Escape Determination)**

80. Mr. Sambuu realleges and incorporates each preceding paragraph.

81. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Its implementing regulations provide for arrest under the authority of a Form I-200 warrant issued by an authorized immigration officer, 8 C.F.R. § 236.1(b)(1), and that an authorized officer make an initial custody determination, 8 C.F.R. § 236.1(c)(8), (d)(1). Section 1226(a) "and its regulations guarantee noncitizens detained under that provision multiple levels of 'substantial procedural protections' against the erroneous deprivation of their liberty," including "arrest upon a valid warrant, notice of the basis for continued detention, an initial custody determination by an immigration officer, and a bond hearing." *Zacarias v. U.S. Gen. Att'y*, No. 1:26-cv-04184 (AMO), ECF No. 12, at 3 (E.D. Cal. Sept. 22, 2026) (quoting *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *5 (D. Nev. July 7, 2026)).

82. Congress permits an immigration officer to arrest without a warrant only where the officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and is likely to escape before a warrant can be obtained for his arrest*." 8 U.S.C. § 1357(a)(2) (emphasis added). The

regulations are to the same effect: "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). And a person arrested without a warrant is entitled to a determination, within forty-eight hours, whether he will be continued in custody. 8 C.F.R. § 287.3(d).

83. ICE's own report describes a warrantless arrest. The officers came "to investigate"; they arrested Mr. Sambuu after he answered their questions; and the report identifies a "Warrant of Arrest" only as the post-arrest "Disposition" of the case. Exh. D at 1–2. On information and belief, no warrant had issued before the arrest. The report records no reason to believe Mr. Sambuu was likely to escape, and there was none: ICE had opened its case two days earlier, ample time to obtain a warrant, and Mr. Sambuu was sitting in a USCIS waiting room for a scheduled appointment, having come of his own accord.

84. An agency is bound to follow its own regulations where they protect individual rights. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954). "ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later[.]" *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025). Where the Government cannot show the process § 1226(a) and its regulations require, the appropriate remedy is release. *Zacarias*, ECF No. 12, at 3–4; *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-CV-05661-DAD-SCR (HC), 2026 WL 2294963, at *2 (E.D. Cal.

Aug. 10, 2026) (granting immediate release where there was no evidence petitioner was arrested pursuant to a warrant).

**COUNT THREE**

**Violation of Substantive Due Process — Fifth Amendment**

**(Detention Not Reasonably Related to Any Permissible Purpose)**

85. Mr. Sambuu realleges and incorporates each preceding paragraph. This Count is pleaded in the alternative.

86. "[S]ubstantive due process protects individuals from state action that interferes with fundamental rights." *Regino v. Staley*, 133 F.4th 951, 959–60 (9th Cir. 2025). Freedom from physical restraint is such a right. *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Government action infringing a fundamental right is constitutional only if "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *see Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

87. Civil immigration detention is permissible only where it bears a reasonable relation to its two recognized purposes: ensuring appearance at removal proceedings and protecting the community. *Zadvydas*, 533 U.S. at 690–91.

88. Neither purpose is served by Mr. Sambuu's continued imprisonment. As to the community: the only conduct in his record is a single episode more than eight years old, for which he served the sentence the Superior Court chose — probation, not prison — and after which the sentencing court itself recorded his custodial status as

own recognizance and transferred his supervision to another county. He has had no law-enforcement contact of any kind since. He has no conviction involving a weapon, a controlled substance, a sexual offense, or a minor. Two employers and two family friends attest to his character. Exh. C at 5–6, 8–9. The Government, which knew of the 2019 conviction throughout, renewed his work authorization rather than detaining him. Detention cannot be narrowly tailored to a danger the Government itself did not perceive for years.

89. As to appearance: Mr. Sambuu has every incentive to appear. His only path to lawful status — his asylum application, pending since 2017 — is adjudicated by the Immigration Judge, and he cannot obtain it except by appearing. *See Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1987). Nothing in his immigration or criminal record reflects a failure to appear, and he was arrested while sitting in a USCIS waiting room for a Government appointment.

90. Any residual concern is readily addressed by means far short of imprisonment — a bond, residence with his citizen sponsors at a fixed address, enrollment in Alternatives to Detention, GPS or telephonic monitoring, in-person reporting on any schedule the Court or the agency directs, surrender of his passport, and full compliance with any protective order. Mr. Sambuu affirmatively consents to any and all such conditions.

91. His continued detention is therefore not narrowly tailored to, and bears no reasonable relation to, any legitimate governmental purpose, and violates substantive due process.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner Erdenebulgan Sambuu respectfully requests that this Court:

1. Assume jurisdiction over this matter;
2. Order Respondents to show cause why the writ should not be granted, with a return due within three days and a hearing set not more than five days after the return, pursuant to 28 U.S.C. § 2243;
3. Declare that Respondents' arrest and continued detention of Mr. Sambuu without notice and without a constitutionally adequate pre-deprivation hearing violated his right to procedural due process under the Fifth Amendment;
4. Grant the Petition and issue a writ of habeas corpus ordering Respondents to release Mr. Sambuu from custody immediately, subject only to those conditions, if any, that were in place before his August 12, 2026 detention, and to return to him any property and documents confiscated at the time of his arrest;
5. Enjoin Respondents from re-detaining Mr. Sambuu during the pendency of his removal proceedings unless they first provide notice and a hearing before a neutral decisionmaker at which the Government proves, by clear and convincing evidence,

that he is a danger to the community or a flight risk that no condition or combination of conditions can reasonably address;

6. Order Respondents to preserve, and, upon a finding of good cause under Rule 6(a) of the Rules Governing Section 2254 Cases, to produce, the body-worn camera footage of the August 12, 2026 arrest, any Form I-200 or other warrant for Mr. Sambuu's arrest showing its time of issuance, any custody determination made under 8 C.F.R. §§ 236.1 or 287.3(d), and the USCIS referral that initiated the August 10, 2026 enforcement case;
7. Order Respondents to file a notice of compliance no later than three days after entry of judgment;
8. Award Petitioner reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and
9. Grant such other and further relief as the Court deems just and proper.

Dated: October 6, 2026 Respectfully submitted,

LAW OFFICES OF JEANNIE JOUNG

Jeannie Joung

Jeannie Joung (SBN 201777)
Attorney for Petitioner
ERDENEBULGAN SAMBUU

**VERIFICATION OF COUNSEL PURSUANT TO 28 U.S.C. § 2242**

I, Jeannie Joung, declare as follows:

1. I am an attorney licensed to practice law in the State of California and admitted to practice before this Court. I am counsel of record for Petitioner Erdenebulgan Sambuu in this action, and I am his retained counsel in his custody proceedings before the Adelanto Immigration Court, where I entered my appearance on Form EOIR-28 on September 10, 2026, and filed his motion for custody redetermination. Except where I state otherwise, I make this verification on personal knowledge, and if called upon I could and would testify competently to the matters stated here.

2. I verify this Petition on Mr. Sambuu's behalf pursuant to 28 U.S.C. § 2242, which provides that an application for a writ of habeas corpus may be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf," and pursuant to Rule 2(c)(5) of the Rules Governing Section 2254 Cases, which this Court may apply to this proceeding under Rule 1(b).

3. I sign as Mr. Sambuu's retained counsel of record, at his direction and with his authorization. I do not appear as a next friend, and no showing under *Whitmore v. Arkansas*, 495 U.S. 149 (1990), is called for: Mr. Sambuu is himself the named Petitioner in this action, he is competent, and he has retained me to bring it on his behalf.

4. Mr. Sambuu is confined at the Adelanto ICE Processing Center in Adelanto, California. Despite diligent efforts I have been unable to obtain his subscribed declaration in advance of this filing, owing to the facility's attorney-access and legal-mail constraints and the time required to obtain a signed document from a person in detention there.

5. I have read the foregoing Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief.

6. The following allegations are true of my own personal knowledge: the procedural history of Mr. Sambuu's custody proceedings; the contents of the Notice to Appear and of the Immigration Judge's September 23, 2026 custody order, both of which I have reviewed and which are attached as Exhibits A and B; the filings I made on his behalf before the Immigration Court, including the date and contents of his motion for custody redetermination and its Exhibits A through G, the exhibits on which this Petition relies being attached, as filed, as Exhibit C; the contents of the Form I-213, Record of Deportable/Inadmissible Alien, dated August 12, 2026, and its attached criminal history records, as filed by DHS in the Immigration Court and attached as Exhibit D; the contents of his immigration file as it has been made available to me; that no Form I-200 administrative warrant has been produced to me by Respondents or by the Immigration Court; and my own appearances and communications in this matter.

7. The allegations concerning the circumstances of Mr. Sambuu's arrest on August 12, 2026, his transport and intake, and the conditions of his confinement at Adelanto are alleged on information and belief, and I believe them to be true. They rest principally on ICE's own account of those events in the Form I-213 (Exhibit D), and also on my communications with Mr. Sambuu, on my review of his immigration file and of the record filed with the Immigration Court, and on information provided to me by third parties with knowledge. Mr. Sambuu has related these facts to me consistently, and nothing in the record known to me is inconsistent with them.

8. Should Respondents controvert any material factual allegation of this Petition, Petitioner respectfully requests an opportunity to be heard on that dispute, including by his own declaration, by expansion of the record under Rule 7 of the Rules Governing Section 2254 Cases, and, if the Court deems it necessary, by an evidentiary hearing under 28 U.S.C. § 2243.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 6, 2026, at Los Angeles, California.

Jeannie Joung

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I, Jeannie Joung, declare as follows:

I am an attorney licensed to practice before this Court and am counsel of record for Petitioner in this action. I am over the age of eighteen years and am not a party to this action.

On the date set forth below, I electronically filed the foregoing PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF and VERIFICATION OF COUNSEL PURSUANT TO 28 U.S.C. § 2242, with exhibits, with the Clerk of the Court for the United States District Court for the Central District of California using the CM/ECF System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 6, 2026, at Los Angeles, California.

Jeannie Joung

Jeannie Joung